UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:23-cv-80911-AMC

**BRENDA LEIGH MARLES**,
and **THE ESTATE OF RICO MARLES**,

    Plaintiffs,

v.

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

**FIRST AMENDED COMPLAINT FOR DAMAGES: WRONGFUL DEATH AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1.    Plaintiffs, Brenda Leigh Marles ("BRENDA"), individually, and as Personal Representative for the Estate of Rico Marles ("ESTATE"), hereby sue Defendant UNITED STATES OF AMERICA ("USA"), and in support thereof alleges:

**INTRODUCTION**

2.    Sgt. Rico Marles ("Rico") was 29 years old when he died by suicide on January 19, 2021, after he placed his loaded Millennium G2 9mm pistol underneath his chin, pulled the trigger, and propelled a bullet through his brain. This tragic incident occurred while he was in bed with his wife, BRENDA, who was sleeping by his side.

3.    Rico's death could have been prevented if he received mental health treatment at the West Palm Beach VA Medical Center ("WPB VAMC") that complied with the standard of care.

4.    Rico is survived by his wife, BRENDA, who brings this Complaint for: (1) Wrongful Death pursuant to the Federal Tort Claims Act and Florida's Wrongful Death statute (28 C.F.R. §14.3, 28 U.S.C. §2674 and Fla. Stat §768.21 et. seq.) and (2) Negligent Infliction of Emotional Distress pursuant to Florida legal precedent set forth in *Champion v. Gray*, 478 So. 2d 17 (Fla. 1985) and *Zell v. Meek*, 665 So. 2d 1048 (Fla. 1995).

///

///

///

## PARTIES

5. BRENDA is a United States citizen and resident of West Palm Beach, Florida, Palm Beach County. She married Rico on May 2, 2017, and they remained married until his death on January 19, 2021.

6. On December 14, 2022, Florida Circuit Judge Laura Johnson: (1) issued an Order appointing BRENDA as the personal representative for the ESTATE[1] and (2) issued Letters of Administration granting her full power to administer the ESTATE according to law.[2]

7. BRENDA is a beneficiary of the ESTATE.

8. Defendant, USA, is a proper Defendant pursuant to the Federal Tort Claims Act. Defendant is a sovereign acting through its employees and agents of the WPB VAMC and Department of Veterans Affairs ("VA").

## JURISDICTION AND VENUE

9. Jurisdiction is proper pursuant to 28 U.S.C. §§1346(b) and 2761 et seq., which vests exclusive subject matter jurisdiction in the Federal District Court.

10. Venue is proper in this District pursuant to 28 U.S.C. §1402(b) and 32 CFR §750.32 because it is where the Defendant's negligence occurred.

11. Pursuant to 28 U.S.C. §1391(e)(1), venue is proper within the Southern District of Florida because the events or omissions giving rise to this action occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. BRENDA has exhausted her administrative remedies pursuant to 28 U.S.C. §2675(a). On November 14, 2022, she submitted a Standard Form 95 Tort Claim to the VA, Office of General Counsel.

13. The VA acknowledged it received BRENDA's Claim on November 16, 2022, and informed her that attorney Lisa Clark was assigned to research the Claim.[3] The VA informed BRENDA that "from the date VA received [her] claim [she was] required to allow VA at least

---

[1] Exhibit A: Judge Johnson's December 14, 2022 Order appointing BRENDA as the personal representative for the Estate of Rico Marles.
[2] Exhibit B: Judge Johnson's December 14, 2022 Order re BRENDA's Letters of Administration.
[3] Exhibit C: January 31, 2023, Letter from the US Department of Veterans Affairs to the attention of Peter G. Bertling, regarding "Administrative Tort Claim Brenda Marles for Rico Marles."

six months to consider [her] claim. After VA has had your claim for at least six months, you may file suit in federal district court."

14. Ms. Clark never interviewed BRENDA, never requested additional time to research the Claim, and never made any attempt to settle the Claim. More than six (6) months have passed since the VA received BRENDA's Claim. Consequently, pursuant to 28 U.S. Code §2675(a), she is filing this Complaint based on the VA's failure to make a final disposition of her Claim within six (6) months after it was filed.

## STATEMENT OF FACTS

15. Rico was born on January 25, 1991, in Monroe, Louisiana. He entered active-duty service in the United States Marine Corps ("USMC") on June 1, 2009, and was honorably discharged on August 30, 2018.

16. During his military career, Rico was an exemplary Marine and well-respected by his colleagues and superiors. He received numerous medals and honors including a Medal of Honor for saving a fellow Marine's life; two Navy and Marine Corps Achievement Medals; three Marine Corps Good Conduct Medals; The National Defense Service Medal; The Afghanistan Campaign Medal; and The Global War on Terrorism Medal.

17. During his service, Rico's USMC performance reviews included the following commendations:

> "Sergeant Marles is one of the most outstanding avionics technicians I have had the pleasure to serve with. His impact on the squadron has been positive and lasting. Exceptionally knowledgeable and a true leader, he has greatly improved the abilities of his fellow avionics technicians through constant and thorough mentorship. Peers and superiors alike look to Sergeant Marles for guidance on the toughest of avionics issues. Moreover, his professionalism and conduct as a Marine are above reproach. Promotion and retention is (sic) a must."

18. Rico and BRENDA first met in 2015 and were married on May 2, 2017. After they were married, Rico wrote in his journal: "I just want to live and be happy. I just want to start a family. I got the wife, I just gotta make it to the kids."

19. Rico earned his associate degree from Embry-Riddle Aeronautical University in May 2017. He was employed by KBR as a logistics coordinator and helicopter mechanic from November 2018 until May 2019. He was also employed by Cyient Inc. as a helicopter mechanic in 2019. Rico wanted to pursue a bachelor's degree in business. He intended to return to school in 2021 and complete his degree by the end of 2023.

20. BRENDA and Rico were a "power couple" whose marriage had a positive impact on their friends and other married couples. Before Rico's death by suicide, they planned to start a family, and when BRENDA unexpectedly became pregnant, Rico was excited beyond imagination. Unfortunately, BRENDA suffered a miscarriage, but that did not deter the couple's dream to have a family and spend the rest of their lives together.

21. Rico was a Marine Veteran with a 100% service-connected disability rating when he presented to the WPB VAMC on January 15, 2021. Fifty percent of this rating was due to the PTSD he developed after being deployed to Iraq and Afghanistan. Rico's distinguished and exemplary service as a United States Marine left him with the invisible injuries of war and on January 15, 2021, he knew he needed help.

22. On January 15, 2021, Rico presented to the Emergency Department ("ED") at the WPB VAMC with complaints of anxiety, hallucinations, chest pain, insomnia, night sweats, and "having crazy dreams" for the past 3-4 days. His hallucinations prevented him from sleeping and were getting worse. He had "been under a lot of stress lately trying to start his business." His "anxiety was causing [him] to have night sweats and [he could not] sleep."

23. Rico's PTSD and anxiety were triggered on January 6, 2021, when he witnessed the siege on our Nation's Capital, and saw the democracy he risked his life to protect, being threatened. He also experienced significant anxiety from the isolating effects of the Covid-19 pandemic, and the increased stress of trying to start a new business during sub-optimal business conditions.

24. Rico did not see a mental health provider during his ED visit on January 15, 2021, even though VHA Directive 1101.05(2) requires that a licensed mental health provider must be available to provide mental health services to ED patients during hours of operation.

25. On January 15, 2021, Rico was not referred to a qualified mental health provider either before or after he was discharged from the ED.

26. On January 15, 2021, Rico did not undergo a suicide risk assessment or mental health evaluation that complied with the standard of care. He was not given any medication to treat his anxiety or insomnia. Instead, he left the ED disappointed and believed his complaints were not taken seriously, nor properly addressed.

27. On January 15, 2021, the WPB VAMC Department of Mental Health was not notified Rico had been evaluated in the ED with complaints of anxiety, hallucinations, chest

pain, insomnia, night sweats, and "having crazy dreams" for the past 3-4 days. His hallucinations prevented him from sleeping and were getting worse. He had "been under a lot of stress lately trying to start his business." His "anxiety was causing [him] to have night sweats and [he could not] sleep.

28. Three days later, on January 18, 2021, Rico returned to the WPB VAMC ED with continuing complaints of unresolved anxiety, and he requested medication for his anxiety and insomnia.

29. On January 18, 2021, Rico did not undergo a suicide risk assessment or mental health evaluation that complied with the standard of care.

30. On January 18, 2021, Rico was not referred to a qualified mental health provider, either before or after he was discharged from the ED.

31. On January 18, 2021, the WPB VAMC Department of Mental Health was not notified Rico returned to the WPB VAMC ED a second time, in three (3) days, with continuing complaints of unresolved anxiety and he requested medication for his anxiety and insomnia.

32. On January 18, 2021, Rico went home and explained to BRENDA he did not believe anyone in the ED took his complaints seriously. Instead, he felt "brushed off" and ignored. Rico was frustrated that no one in the ED tried to find out why he was so anxious and could not sleep. Some of Rico's WPB VAMC ED records even indicate he "denies anxiety." *Nothing could have been further from the truth.*

33. During the late evening of January 18, 2021, BRENDA and Rico were in the bedroom watching television until BRENDA fell asleep. At approximately 1:00 a.m. on January 19, 2021, she was immediately awakened by the sound of a pop and smell of smoke. BRENDA thought something was wrong with the heater and asked Rico if he heard the pop. He was nonresponsive and BRENDA could not revive him.

34. BRENDA called 911. She told the dispatcher Rico was not responding and, after providing an address, she was immediately transferred to fire rescue. She was asked: "What's going on?" She explained Rico was not responding and did not know if he was breathing. She could not see any movement in his chest. Rico's mouth was open, and it looked like he was bleeding. BRENDA stated: "Oh my God, I think he's killed himself. Oh my God. Oh my God. He has blood. It looks like he shot himself and I'm smelling smoke . . . He's under a cover. I'm scared to touch him . . . He has blood on his face . . . Yes, [he has a gun] . . . He's a retired

Marine. He's a Veteran . . . Oh God, please come. I can't touch him. I can't . . . He [shot himself] under the chin on his face."

35. BRENDA was in shock and repeatedly stated: "Oh my God. This is not real. Oh my God. Oh my God. No. No. No." She told the 911 dispatcher that Rico had been struggling with PTSD and had gone to the VA. She asked the dispatcher to "[p]lease hurry. Please hurry. Oh my God, this is not real."

36. BRENDA asked the dispatcher: "Am I sleeping? Am I dreaming? Am I dreaming?" The dispatcher replied: "You're talking to me on the phone . . . I don't think you are dreaming, or you would not have called 911."

37. BRENDA became physically ill after finding Rico in bed next to her with a blood soaked face and a bullet in his brain. Her muscles tightened, she became dizzy, delirious, nauseated, tachycardic, and developed gastrointestinal symptoms. Her physical symptoms and anxiety became so severe that she subsequently went to the local Emergency Department for evaluation and treatment.

38. BRENDA has been living a nightmare since Rico's death by suicide on January 19, 2021. She cannot erase the sight of his blood-soaked face from her mind. She continues to smell the smoke that woke her up during the early morning of his death. BRENDA is a 32-year-old widow whose life will never be the same.

39. BRENDA has been diagnosed with PTSD, anxiety, and depression which require that she be treated with medication and attend regular therapy sessions with a qualified mental health provider.

40. On October 19, 2021, BRENDA attended a "Disclosure Of Adverse Event" Meeting to discuss Rico's death by suicide, as required by VHA Directive 1004.08. According to the Directive, the "VHA believes that there is an unwavering ethical obligation to disclose to patients harmful adverse events that have been sustained in the course of their Department of Veterans Affairs (VA) care."

41. Disclosure of an adverse events refers to the "forthright and empathetic discussion of clinically significant facts between providers or other VHA personnel and patients or their personal representatives about the occurrence of a harmful event. . . ."

42. According to VHA Directive 1004.08 it is "VHA policy to disclose harmful or penitently harmful adverse events to patients or their personal representatives in order to

maintain trust between patients and VA healthcare professionals, and to ensure uniform practice across all VA medical facilities."

43. The individuals who attended the October 19, 2021, Disclosure of Adverse Event Meeting include, but are not limited to: (1) BRENDA, (2) Yvette Fort: BRENDA's mother who is a licensed clinical social worker; (3) Dr. Ronald Williams: WPB VAMC Chief of Staff; (4) Dr. Eknath Naik: WPB VAMC Chief of Emergency Medicine; and (5) Dr. Melanie Perez: WPB VAMC Chief of Psychology.

44. Rico's WPB VAMC records include a progress note entitled: "Institutional Disclosure of Adverse Event," but it is incomplete and does not adequately convey what transpired during this meeting. In fact, even though the note was authored by Dr. Williams, it does not include the admission of liability he made during the meeting.

45. During the October 19, 2021 meeting, Dr. Williams, acting on behalf of the WPB VAMC as its Chief of Staff, told BRENDA he was there to express his "deepest regret and apologies for what happened to her husband." He "fully admitt[ed]" the "bottom line" was "we let [Rico] down. We are here to apologize . . . [and] maybe we won't fail another Veteran going forward."

46. BRENDA was emotionally traumatized by participating in the October 21, 2021, meeting. At the core of her being, she wanted to understand what exactly went wrong. How was her husband treated during his ED visits and why did the failures occur? She explained it was not easy for her husband, who was a Marine, to reach out for help, but he did, and was let down. BRENDA explained that, as the wife of a Marine, she put a lot of trust in the VA health system, and wanted to understand what went wrong and why Rico's death by suicide occurred.

47. Dr. Melanie Perez, WPB VAMC Chief of Mental Health, told BRENDA she could not explain why, after Rico's ED visits on January 15 and 18, the mental health department was not notified of these visits or why he was not referred to the department. Dr. Perez explained that *if* mental health had been notified of Rico's ED visits, they would have reached out to him as they were required to do.

48. BRENDA told Dr. Perez that after Rico came back from the ED, he did not believe they understood why he was there and "he felt brushed off." Rico had explained it was a "common occurrence" for him to be "misunderstood, unheard and brushed off." BRENDA reiterated that it took a lot of courage for a Marine to ask for help. Dr. Perez agreed it took "a

brave person to ask for help, and he did.  He asked for help." Unfortunately, Rico did not receive the help he needed, and BRENDA now lives with the reality of his death by suicide every day of her life.

49.     Dr. Perez explained the WPB VAMC performed a root cause analysis following Rico's death by suicide and admitted they "definitely missed the boat." Dr. Perez explained that many factors such as "Covid, compassion fatigue, riots and changes in the government" triggered Rico's symptoms of PTSD, especially given his 100% service-connected disability rating.  Dr. Perez told BRENDA she heard her "loud and clear" and reiterated her opinion that they "missed the boat" when it came to appropriately evaluating the causes of Rico's anxiety and "*insuring*" he was "*engaged,*" or an appointment was made for him to see a mental health provider before he left the ED.

50.     During the meeting, Yvette Fort, BRENDA's mother, and a licensed clinical social worker, expressed concern that Rico's complaint regarding anxiety was not critically evaluated, nor was he seen by a mental health provider.

51.     Dr. Williams "totally agreed" with Ms. Fort and reiterated they "failed the Veteran, end of story."  Dr. Williams admitted Rico's secondary complaints of anxiety "should have had as much weight" as his primary physical complaints and he told BRENDA:

> We are here to apologize and say we did something wrong.  We have found areas of opportunity that we will definitely be changing for the sacrifice that your husband did both in combat and here in the combat of healing which we failed him too.  It's horrible, horrible, horrible, horrible, and I'm sorry you're going through this pain and this is why we are here to say we are sorry.  We are not going to justify. It does not matter. We did something wrong. [Rico] left this building, and we did not surround him with the care to protect him . . . It's horrible and I am not going to wishy-wash it for you anymore.  We have experts who have said we could have done something different and there's no doubt about that.

52.     At the conclusion of the October 29, 2021, meeting, BRENDA was told she had the right to file a claim for damages against the WPB VAMC and was given the necessary paperwork to do so.

## FIRST CLAIM FOR RELIEF
## (WRONGFUL DEATH)

53.     BRENDA realleges paragraphs 1 through 52 as if fully stated herein.

54. As a provider of medical and mental health services to Rico, the USA, and its agents and employees at the WPB VAMC, had a duty to provide him with medical and mental health treatment that complied with the standard of care. The USA, and its agents and employees at the WPB VAMC, breached the duty of care they owed to Rico. The breaches in the standard of care, include, but are not limited to:

(a) On January 15, 2021, Defendant's agents and employees failed to perform a mental health evaluation of Rico that complied with the standard of care.

(b) On January 15, 2021, Defendant's agents and employees failed to perform a suicide risk assessment of Rico that complied with the standard of care.

(c) On January 15, 2021, Defendant's agents and employees failed to have Rico evaluated by a qualified mental health provider before he was discharged from the WPB VAMC.

(d) On January 15, 2021, Defendant's agents and employees failed to refer Rico to a qualified mental health provider after he was discharged from the WPB VAMC.

(e) On January 15, 2021, Defendant's agents and employees failed to notify the WPB VAMC Department of Mental Health that Rico had been evaluated in the ED with complaints of anxiety, hallucinations, chest pain, insomnia, night sweats, and "having crazy dreams" for the past 3-4 days. His hallucinations prevented him from sleeping and were getting worse. He had "been under a lot of stress lately trying to start his business." His "anxiety was causing [him] to have night sweats and [he could not] sleep.

(f) On January 18, 2021, Defendant's agents and employees failed to perform a mental health evaluation of Rico that complied with the standard of care.

(g) On January 18, 2021, Defendant's agents and employees failed to perform a suicide risk assessment of Rico that complied with the standard of care.

(h) On January 18, 2021, Defendant's agents and employees failed to have Rico evaluated by a qualified mental health provider before he was discharged from the WPB VAMC.

///
///

      (i)    On January 18, 2021, Defendant's agents and employees failed to refer Rico to a qualified mental health provider after he was discharged from the WPB VAMC

      (j)    On January 18, 2021, Defendant's agents and employees failed to notify the WPB VAMC Department of Mental Health that Rico returned to the WPB VAMC ED with continuing complaints of unresolved anxiety and requested medication for his anxiety and insomnia.

55. As a direct and proximate result of these breaches of duty that the USA, and its employees at the WPB VAMC owed to Rico, the ESTATE has sustained losses and is seeking all compensatory damages allowable under Florida and federal law for Rico's wrongful and premature death including, but not limited to:

56. All damages allowable under (1) Fla Stat. §768.21 for the loss of net accumulations which might reasonably have been expected but for Rico's wrongful death, and (2) memorial, funeral, and burial expenses.

57. BRENDA, as the beneficiary of Rico's ESTATE, is entitled to recover damages pursuant to Fla Stat. § 768.21 *et. seq.* for the (1) value of lost support from the date of Rico's death, and future loss of support and services; (2) loss of household/family guidance services; (3) loss of household/family accompaniment services; (4) loss of relationship and (5) compensation for the mental pain and suffering she has experienced since the date of Rico's death and will continue to experience for the rest of her life.

## SECOND CLAIM FOR RELIEF
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

58. BRENDA realleges paragraphs 1 through 52 as if fully stated herein.

59. As a provider of medical and mental health services to Rico, Defendant and its agents and employees at the WPB VAMC, had a duty to provide him with medical and mental health treatment that complied with the standard of care.

60. Defendant, and its agents and employees at the WPB VAMC, breached the duty of care they owed to Rico. The breaches in the standard of care, include, but are not limited to:

      (a)    On January 15, 2021, Defendant's agents and employees failed to perform a mental health evaluation of Rico that complied with the standard of care.

 (b) On January 15, 2021, Defendant's agents and employees failed to perform a suicide risk assessment of Rico that complied with the standard of care.

 (c) On January 15, 2021, Defendant's agents and employees failed to have Rico evaluated by a qualified mental health provider before he was discharged from the WPB VAMC.

 (d) On January 15, 2021, Defendant's agents and employees failed to refer Rico to a qualified mental health provider after he was discharged from the WPB VAMC.

 (e) On January 15, 2021, Defendant's agents and employees failed to notify the WPB VAMC Department of Mental Health that Rico had been evaluated in the ED with complaints of anxiety, hallucinations, chest pain, insomnia, night sweats, and "having crazy dreams" for the past 3-4 days. His hallucinations prevented him from sleeping and were getting worse. He had "been under a lot of stress lately trying to start his business." His "anxiety was causing [him] to have night sweats and [he could not] sleep.

 (f) On January 18, 2021, Defendant's agents and employees failed to perform a mental health evaluation of Rico that complied with the standard of care.

 (g) On January 18, 2021, Defendant's agents and employees failed to perform a suicide risk assessment of Rico that complied with the standard of care.

 (h) On January 18, 2021, Defendant's agents and employees failed to have Rico evaluated by a qualified mental health provider before he was discharged from the WPB VAMC.

 (i) On January 18, 2021, Defendant's agents and employees failed to refer Rico to a qualified mental health provider after he was discharged from the WPB VAMC

 (j) On January 18, 2021, Defendant's agents and employees failed to notify the WPB VAMC Department of Mental Health that Rico returned to the WPB VAMC ED with continuing complaints of unresolved anxiety and requested medication for his anxiety and insomnia.

61. As a direct and proximate result of Defendant's breach in the duty of care, Rico died by suicide on January 19, 2021.

62. BRENDA was sleeping next to Rico when he placed his loaded pistol underneath his chin and pulled the trigger. BRENDA was immediately awakened by the gun shot and smell of smoke after Rico shot himself in the head. BRENDA asked Rico if he heard the pop, but he was nonresponsive, and she could not revive him.

63. As BRENDA attempted to revive Rico, she saw a bullet hole underneath his chin and the blood that covered his face. It is a sight she cannot erase from her mind.

64. BRENDA and Rico were married on May 2, 2017. They had a close, committed, and loving relationship when Rico died by suicide on January 19, 2021.

65. As a direct and proximate cause of witnessing Rico's death by suicide, BRENDA suffers from numerous physical injuries including gastrointestinal injuries, muscle tightness, dizziness, tachycardia, and other physical ailments.

66. As a direct and proximate cause of witnessing Rico's death by suicide, BRENDA sees a qualified mental health provider for management and treatment of her PTSD, depression, and anxiety, nightmares, insomnia, loneliness, social isolation, crying, loss of security, feeling hazy, headaches, gastrointestinal issues, and feeling overwhelmed.

67. BRENDA's physical and emotional injuries are the direct and proximate result of the emotional distress she developed, and continues to experience, when she noticed Rico had stopped breathing, saw his blood-soaked face, and realized he shot himself in the head.

68. As a direct and proximate result of the breaches of duty by the USA, and its employees at the WPB VAMC, BRENDA is seeking damages for her Negligent Infliction of Emotional Distress which include, but are not limited to:

    (a) Any past and future bodily injury, pain and suffering, mental anguish, inconvenience, humiliation, and loss of capacity for the enjoyment of life.

    (b) Any past and future loss of earnings and earning capacity.

    (c) Any past and future medical and mental health care expenses.

**RELIEF REQUESTED**

69. WHEREFORE, ESTATE, and BRENDA, respectfully seek and request the following relief:

    (a) That process issue and service be made and effected against Defendant in the manner prescribed by law;

(b) That Judgment be granted in favor of the ESTATE and BRENDA against Defendant for compensatory damages and any other costs the ESTATE may be lawfully entitled to recover;

(c) For the Court to make a determination as to all factual disputes and damages as to Defendant USA; and

(d) For such additional and further relief as the Court may deem appropriate.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contention have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated this 20th day of June 2023.

Attorneys for PLAINTIFFS

By:   */s/ Katherine S. Bender*
      Katherine S. Bender, Esq.
      FL Bar No.: 0123334
      BENDER & ROBB, PLLC
      9100 S. Dadeland Boulevard
      Suite 1500
      Miami, FL 33156
      (305) 701-4270 Telephone
      (786) 431-2597 Facsimile
      kat@benderrobb.com

By:   */s/ Peter G. Bertling*
      Peter G. Bertling
      CA Bar No. 131602
      BERTLING LAW GROUP
      21 East Canon Perdido Street
      Suite 204B
      Santa Barbara, CA 93101
      (805) 452-8305 Telephone
      (805) 869-1597 Facsimile
      peter@bertlinglawgroup.com
      *Admitted Pro Hac Vice*