UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case. No. 9:23-CV-80911-CANNON

ESTATE OF RICO MARLES, by and
through Brenda Leigh Marles; BRENDA
LEIGH MARLES, individually,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____

**DEFENDANT'S RULE 12(B)(1) PARTIAL MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant, the United States of America, by and through the undersigned Assistant United States Attorney, and pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, moves to dismiss Plaintiff's negligence claims regarding the Department of Veterans Administration's ("VA") electronic health record ("EHR") system known as CPRS/VISTA and medication reconciliation system. Because sovereign immunity protects the United States from these claims, the Court lacks subject matter jurisdiction, and the claims should be dismissed.

**I.    INTRODUCTION AND BACKGROUND**

By this Motion, Defendant seeks to partially dismiss Plaintiff's sole remaining claim pursuant to the discretionary function exception to the Federal Tort Claims Act ("FTCA") which relies on the design and operation of the CPRS/VISTA system, the VA's in-house electronic health record system for patient care which has been in existence for decades. As a threshold matter, in addition to being barred under the discretionary function exception to the FTCA, Plaintiff did not

exhaust her administrative remedies for this claim as required prior to filing suit, or pled this basis of liability in the Amended Complaint. Therefore, the claim is barred under the FTCA. Furthermore, Plaintiff's wholesale attribution of fault to the VA as an institution at large is also improper as the FTCA only waives sovereign immunity for the acts of federal employees, and not at the institutional level.

As part of this claim, Plaintiff recently put forward in discovery a new theory that the VA should have designed and managed its EHR system differently to prepopulate a "comprehensive medical history" and "provide an opportunity for medication reconciliation" by prepopulating Rico Marles's previous, expired medications. *See* **Exhibit A**, Excerpt of Report of Paul Louis, M.D. at 10-15. Dr. Louis, Plaintiff's emergency medicine expert—who has never used or even accessed the EHR system at issue—simply speculates that the system failed to provide Rico Marles's health and medication history and, therefore, the design was improper and failed to satisfy the standard of care.

For example, Dr. Louis asserts that the VA's EHR system did not provide Rico Marles's history, but then admits that he has never used the system, did not access the system for his report, did not review Rico Marles's records in electronic format in the actual EHR, does not know how to navigate the system, does not know what prepopulates into the system, does not know how VA staff utilize the system, is not an expert with EHR systems, and has had no training in the design and implementation of EHR systems. *See* **Exhibit B**, Louis Dep. 37:13-25, 38:16-39:3, 127:7-23, 129:2-133:2. Thus, Dr. Louis' entire opinion relating to the EHR system and medical reconciliation is based on a PDF printout of Rico Marles's records. *Id.* at 130:2-13. Dr. Louis has no idea how the system populates information, yet opines that the system failed to prepopulate information appropriately in this case. *Id.* at 129:2-133:2.

Plaintiff does not identify any individuals who failed to appropriately use the EHR system or failed to reconcile the medications. *See* Louis Dep. at 40:13-20. Rather, Plaintiff faults the entire VA for having an EHR system she argues is substandard in the first place (but then does not say exactly what a proper design would have entailed). However, as described below, these claims are barred for lack of jurisdiction because the United States has not waived sovereign immunity for such claims. Instead, under the FTCA, these claims are subject to dismissal because (1) Plaintiff failed to administratively exhaust this claim; (2) the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), applies, and (3) the FTCA's waiver of sovereign immunity is limited to allegations of negligence by individual government employees, not a governmental entity. 28 U.S.C. 1346(b).

## II.   LEGAL STANDARD

A district court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Dismissal under Rule 12(b)(1) may be based on either a facial or a factual challenge to the complaint. *Stalley ex rel. United States v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A facial attack on a complaint requires only that the court review the complaint to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, whereas a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of pleadings, and matters outside the pleadings." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "[W]here a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence" relevant to its jurisdictional determination. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

### III.     FACTUAL BACKGROUND ON EHR SYSTEM AT VA

In the 1980s, the VA developed its first EHR software and made it available in the public domain. *See* **Exhibit C**, History of IT at VA.[1] Thus, it is open-source software. *See* **Exhibit G**, Declaration of Cathleen Rhoades, Chief of Health Informatics at WPB VAMC ("Rhoades Decl."), ¶ 7. In the 1990s, the VA continued developing its own Computerized Patient Record System ("CPRS"), which provided VA physicians with immediate access to certain records. *Id.* In 2005, Congress gave the VA's Chief Information Officer sole budget authority and in 2007, IT services (including EHR systems) were centralized at the VA. *Id.* Congress has continued to invest in EHR systems[2] at the VA without micromanaging the VA's management, and the VA has continuously worked to improve and modernize its systems. *See generally*, Rhoades Decl. The CPRS system is implemented at each medical center and certain modules or presentation in the interface is customizable to the needs of each facility. Rhoades Decl. ¶¶ 3-4, 8-11, 15-17. Specifically, the EHR systems provide the VA with the discretion to allow VA providers from different departments to view the information stored and generate template notes to match the differing requirements of the workflow of these different departments. *Id*. at ¶¶ 8-11.

---

[1] HISTORY OF IT AT VA, *available at* https://www.oit.va.gov/about/history.cfm? (last accessed July 24, 2024)  The Court may take judicial notice of information posted on government websites.  *See Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017).

[2] Examples of funding by Congress for the Department of Veterans Affairs to maintain or implement a new EHR can be found in annual budgets from Military Construction, Veterans Affairs, and Related Agencies Subcommittees (MILCON) at https://appropriations.house.gov/subcommittees/military-construction-veterans-affairs-and-related/military-construction-veterans (last visited July 24, 2024).

4

## IV. ARGUMENT

**A. Plaintiff did not exhaust administrative remedies for theories relating to the EHR.**

As a threshold matter, the Court lacks subject matter jurisdiction over this claim as Plaintiff did not present it during the administrative claim process, a prerequisite for suit under the FTCA. The Court previously dismissed Count 2 in the Amended Complaint, Brenda Marles's individual claim for negligent infliction for emotional dismiss, for this same reason. *See* D.E. 47. As stated by this Court, "[a]s the Eleventh Circuit has explained, the Federal Torts Claims Act requires that each claim and each claimant be presented initially to the appropriate administrative agency prior to maintaining a suit against the United States for that claim." *Id*. (citing *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006); *Dames v. United States*, No. 22-80553-CIV, 2023 WL 3748478 (S.D. Fla. June 1, 2023)). This was not done for this claim, as nowhere in the narrative attached to Plaintiff's SF-95 did Plaintiff refer to any alleged deficiencies in the VA's EHR as a basis for liability as it relates to the death by suicide of Rico Marles. Instead, this claim of liability appears for the first time in discovery, through the expert report of Dr. Paul Louis. *See* Ex. A.

The FTCA provides a limited waiver of the United States' sovereign immunity for tort claims. *Suarez v. United States,* 22 F.3d 1064, 1065 (11th Cir. 1994). "It allows the government to be sued by certain parties under certain circumstances...." *Id.* However, only those claims presented initially to the appropriate administrative agency (in this case, the VA) are cognizable in a tort action against the United States under the FTCA. *See* 28 U.S.C. § 2675(a); *Davis v. Marsh*, 807 F.2d 908, 912 (11th Cir. 1987). The claims procedure under 28 U.S.C. § 2675(a) is jurisdictional. *Martinez v. Minnis*, 257 F. App'x 261, 263 (11th Cir. 2007) ("As a prerequisite to bringing suit under the [Federal Tort Claims Act], a potential plaintiff must first present the claim

to the appropriate Federal agency.") (citing 28 U.S.C. § 2675(a)). Section 2675(a) provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C.A. § 2675(a); *Orlando Helicopter Airways v. United States*, 75 F.3d 622, 624-25 (11th Cir. 1996). Thus, to satisfy § 2675, a claimant must (1) give the appropriate agency written notice of the tort claim to enable the agency to investigate; and (2) state a sum certain as to the value of the claim. *Id*. (citing *Free v. United States,* 885 F.2d 840, 842 (11th Cir. 1989)). If a plaintiff fails to comply with the notice requirements of § 2675(a), then the plaintiff fails to exhaust administrative remedies and the district court lacks jurisdiction and the claim must be dismissed. *Lebedinsky v. United States*, 20-21911-CIV, 2020 WL 6544638, at *6 (S.D. Fla. Nov. 6, 2020) (quoting *Martinez*, 257 F. App'x at 263).

In this case, Plaintiff did not provide written notice of a claim based on a failure of the VA's EHR system during the administrative claim process. *See* D.E. 34-1, pp.17-23. Therefore, it is barred. When a plaintiff alleges a claim or theory in her lawsuit that is separate and distinct from claims or theories asserted in the administrative claim, it amounts to a failure to exhaust administrative remedies, requiring dismissal. *See Dames v. United States*, No. 22-cv-80553, 2023 WL 3748478, at *3-4 (S.D. Fla. June 1, 2023) (Cannon, J.) (finding court lacked jurisdiction when plaintiff brought claims in court based on lack of informed consent, but failed to assert this theory on his SF-95 and during administrative claim process); *Mejia v. United States*, No. 6:09-cv-1348, 2011 WL 2456374, at *3 (M.D. Fla. Mar. 16, 2011) (administrative claim discussed injuries sustained during childbirth but nothing regarding pre-natal care, and court concluded plaintiff

6

failed to exhaust claims relating to pre-natal care); *McElwaney v. United States*, No. 1:18-cv-1810, 2018 WL 11464787, at *3 (N.D. Ga. Nov. 19, 2018) (plaintiffs failed to exhaust administrative remedies for loss of consortium claim when they had alleged separate personal injuries, and types of damages for each claim differed). Therefore, since Plaintiff failed to comply with § 2675(a), the Court lacks jurisdiction over the claim.[3]

    **B.**    **The United States does not waive sovereign immunity for Plaintiff's claim regarding the EHR system because the discretionary function exception to the FTCA applies.**

It is axiomatic that the United States is immune from suit, absent an unequivocal waiver. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020). The FTCA is a limited waiver of sovereign immunity, making the federal government liable for torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *United States v. Orleans*, 425 U.S. 807, 813 (1976).

The statute has several exceptions, "which serve to block the waiver of sovereign immunity that would otherwise occur under the FTCA." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) (citation omitted). "These exceptions 'must be strictly construed in favor of the United States,' and when an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." *Id.* (citation omitted). In this case, one such exception to the FTCA applies: the discretionary function exception. *See* 28 U.S.C. § 2680(a). By its application, this Court lacks subject matter jurisdiction over Plaintiff's

---

[3] Defendant would also note for the Court that permitting this claim to proceed to trial would add significant time to the trial period through the testimony of additional witnesses and complicate the critical issues to be decided by the Court at trial.

claim that the agency "could" have set up its EHR system differently so that VA emergency department staff would have seen the entirety of Rico Marles's mental health records from previous visits with other VA departments and staff. These theories of liability should be dismissed.

The discretionary function exception precludes government liability for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Without this exception, government operations would be burdened, if not paralyzed, by courts "second-guessing . . . legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 814 (1984). Thus, the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Id.* at 808.

The Eleventh Circuit has "consistently treated the discretionary-function exception to the FTCA's waiver of sovereign immunity as a matter affecting the district court's subject-matter jurisdiction." *Cuadrado-Concepcion v. United States*, 851 F. App'x 985, 989 (11th Cir.), *cert. denied*, 142 S. Ct. 407 (2021) (affirming the district court's dismissal of plaintiff's complaint for lack of subject matter jurisdiction based on the discretionary function exception) (citing *Foster Logging,* 973 F.3d at 1167). And, when the government asserts a lack of subject matter jurisdiction, the Eleventh Circuit "generally place[s] the burden on the plaintiff to 'prove that the discretionary function exception does not apply.'" *Cuadrado-Concepcion*, 851 F. App'x at 990 (citing *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002)); *Slappey v. U.S. Army Corps of Eng'rs*, 571

F. App'x 855, 856 (11th Cir. 2014) (where, as here, a factual challenge to subject matter jurisdiction is raised, "plaintiff bears the burden of proving that jurisdiction exists, i.e., that the discretionary function exception does not apply.") (citation omitted).

The discretionary function exception also applies to "determinations made by executives or administrators in establishing plans, specifications or schedules of operations." *Dalehite v. United States*, 346 U.S. 15, 36 (1953). Thus, decisions made at an administrative level, such as those relating to the VA EHR system, are not actionable under the FTCA. *See Boruski v. United States*, 803 F.2d 1421, 1428-29 (7th Cir. 1986) (technical decision-making on implementation of government plans not actionable under discretionary function exception); *see also Estate of Dash v. United States*, No. 22-cv-80015, 2022 WL 22317681, at *1 (S.D Fla. Oct. 11, 2022) (discretionary function exception applied to bar negligence theories regarding VA's decision not to install certain types of cameras and doors at medical facility).

To determine if the discretionary function exception is properly invoked, courts apply a two-part test. First, courts "consider the nature of the conduct and determine whether it involves an element of judgment or choice." *Id.* at 1341 (citing *Gaubert*, 499 U.S. at 322) (internal quotations omitted). If "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception is unavailable. *Id.* If, however, a statute, regulation, or other directive does not mandate a specific course of action, then the conduct involves an element of choice and courts move on to the second part of the test. *Gaubert*, 499 U.S. at 323; *OSI, Inc. v. U.S.*, 285 F.3d 947, 952-53 (11th Cir. 2002) (explaining that "an agency manual which provides only objectives and principles for a government agent to follow does not create a mandatory directive which overcomes the discretionary function exception to the FTCA"); *Aragon v. United States*, 146 F.3d 819, 824-25 (10th Cir. 1998) (policies and directives providing guidance

9

do not constitute mandatory directives); *Autery v. U.S.*, 992 F.2d 1523, 1529 (11th Cir. 1993) ("Only if a federal statute, regulation, or policy specifically prescribes a course of action, embodying a fixed or readily ascertainable standard, will a government employee's conduct not fall within the discretionary function exception.") (internal quotations and citations omitted); *Hughes v. U.S.*, 110 F.3d 765, 768 (11th Cir. 1997) (same).

Second, "if the conduct at issue involves the exercise of judgment, [the court] must determine whether that judgment is grounded in considerations of public policy." *Id.* Courts "focus on the nature of the actions taken and on whether they are susceptible to policy analysis," rather than "on the subjective intent of the government employee or whether the employee actually weighed social, economic, and political policy considerations before acting." *Id.* Courts presume actions are grounded in public policy where a statute or regulation allows the government to exercise discretion. *Gaubert*, 499 U.S. at 324-25.

Here, the discretionary function exception bars Plaintiff's claims that the VA was negligent for its design and implementation of its EHR system and medication reconciliation system, and that the actions of the providers who relied on the EHR and medical reconciliation system were negligent as a result. Thus, these theories of liability should be dismissed for lack of subject matter jurisdiction.

1. <u>The VA's decisions on how to design and implement its EHR system involve elements of judgment and choice.</u>

No mandatory directive requires the VA to design, implement, or maintain its EHR system in a particular way, nor is there such a directive with specific requirements for medication reconciliation. Instead, each facility at the VA has the discretion to customize aspects of the open-source EHR system to meet clinical needs. *See* Ex. G., Rhoades Decl. ¶¶ 7-11. Furthermore, the VA has significant discretion in the way it employs its EHR system to populate patient records,

including how to incorporate a patient's medications. *Id*. at ¶¶ 8-11. Indeed, in Congress' most recent resolutions to appropriate funding for the VA EHR system, it clearly intended for the VA to exercise discretion, as the resolutions centered on requirements that the VA submit reports detailing deployment plans, processes, metrics, and stability of the EHR system. *See* **Exhibit D**, Excerpt of H.R. 4336 at 44-47.[4] Significantly, there are no resolutions or other documents mandating *how* the system is to be deployed, only documents providing general guidance and objectives, leaving it to the VA to implement and manage its EHR systems to best serve its patients.

For example, VHA Handbook 1907.01 "provides basic health information procedures for managing the patient's health record." *See* **Exhibit E**, VHA Handbook 1907.01, at 4[5] (Mar. 19, 2015). The Handbook provides that the VA must maintain patient health records, and that the EHR "must be standardized with regard to content, creation, maintenance, management, processing, and expected quality measures. Electronic capture and storage of patient health information must be implemented to enhance access to patient data by health care practitioners and other authorized users." *Id.* The Handbook notes that health records must be readily accessible to authorized staff and limited to protect patient confidentiality. *Id.* at 5. The director of a VA facility "is responsible for establishing policies and processes" to ensure relevant information is available, that access is controlled, and that information is appropriately maintained, among other things. *Id.* at 9-10. The Handbook further provides that a unique health record is created and maintained for each patient, that health records must contain authenticated documents, and that health records "will not be purged from the electronic system." *Id.* at 12-13. These directives are general in nature and plainly

---

[4] The full copy of the Resolution providing for the concurrence by the House in the Senate Amendment to H.R. 4366 (a 1,050 page PDF) is available at https://docs.house.gov/billsthisweek/20240304/HMS31169.PDF (last visited July 24, 2024).
[5] Pagination follows the PDF page number.

contemplate that each VA facility has the discretion to manage its EHR system in the manner it sees fit to ensure proper maintenance, availability, and access to health information. *See Gabriel v. U.S.*, No. 3:06-cv-917, 2009 WL 22289, at *3-4 (M.D. Fla. Jan. 2, 2009) (no mandatory directive existed for National Park Service employees in determining safety issues, and decision whether to enact specific measures fell within discretionary function exception); *Hughes*, 110 F.3d at 768 (guidelines regarding security at post office locations were not mandatory directives, as they allowed postal inspectors and location supervisors to make security decisions); *OSI, Inc.*, 285 F.3d at 952-53 (handbook that governed landfill decisions and provided objectives did not create a mandatory obligation, and waste disposal involved elements of judgment or choice).

The fact the implementation of the policies and requirements of the EHR are discretionary is supported by the fact WPB VAMC has its own informatics team to implement the EHR at the facility level and customize it to meet provider needs in the VA's discretion. *See, e.g.,* Rhoades Decl. ¶¶ 2-4 (generally describing Ms. Rhoades' role as Chief Health Informatics Office in the Office of High Reliability for the West Palm Beach Veterans Health System at the WPB VAMC and the Health Informatics department generally at the WPB VAMC); ¶ 8 ("WPB VAMC can customize CPRS functionality to view the information stored in Vista in a matter that best suits the needs of the different department and providers who rely on the information stored in the EHR"); Rhoades Decl. ¶ 11 ("Certain services … can request the generation of template notes to be used by their providers to match their specific workflows."); Rhoades Decl. ¶¶ 12, 15, 16 (as CHIO, Ms. Rhoades' "office's main purpose is to plan, manage, deliver, document, and analyze content and healthcare population data for positive outcome in the clinical setting at WPB VAMC" and may update the local system and make requests to VISN regional contact or VA OIT for a functionality that does not exist and update elements across the system).

With no mandatory directives governing EHR systems, the management of such a system is "precisely the sort of policy-based decision protected by the discretionary function exception." *See Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1133, 1172 (D.N.M. 2021) (conduct in equipping emergency department and related decisions fall under discretionary function exception) (citing *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 976 (10th Cir. 1994) and *Boyle v. United Techs. Corp*, 487 U.S. 500, 511 (1988)); *Fang v. United States*, 140 F.3d 1238, 1242 (9th Cir. 1998) (discretionary function exception applies to National Park Service's decisions on what medical equipment to stock onsite); *Peeples v. U.S. Dep't of Veterans Affairs*, 2016 WL 7383357, at *4-5 (M.D. Fla. Nov. 30, 2016) (Report and Recommendation that the VA's failure to provide a specific medical treatment patient requested fell under discretionary function exception where no mandatory directive required such treatment) (Report and Recommendation *adopted in part* at *Peeples v. U.S. Dep't of Veterans Affairs*, 2016 WL 7374552 (M.D. Fla. Dec. 20, 2016) (adopting the report and recommendation that the claim fell under the discretionary function exception)). A history of EHR development and implementation at the VA further underscores the VA's discretion to develop and manage its EHR systems. *See* Ex. C; Ex. G, Rhoades Decl. at ¶ 8-12, 15-16 (demonstrating the discretion of the VA in updating and customizing this EHR system).

Regarding medication reconciliation, Plaintiff cites VHA Directive 1345 and complains that Mr. Marles' past, expired prescriptions were not reconciled in the EHR. *See* Ex. A, Report of Paul Louis, M.D., at 15. However, Directive 1345 contains no requirements whatsoever regarding specifically how medications are reconciled within the EHR. Rather, it provides that "[i]t is VHA policy to utilize intentional medication reconciliation standards to ensure that all eligible Veterans cared for within the VA system receive well-coordinated, safe, appropriate and patient-centered

13

health care at all levels and transitions of the health care continuum." *See* Ex. F at 9. Directive 1345 then affords discretion to each layer of the VA system to determine the most effective way to implement this policy, from the Under Secretary for Health to the individual VA hospital directors and providers. *Id.* at 9-13 (*e.g.* VA facility director ensures operating procedures conform to safety elements and guidance; defines roles, tasks, and steps as part of medication management process; defines processes used; requires medical reconciliation be initiated with changes in medication and/or care). Thus, the VA's decisions in the implementation, management, and use of its EHR system and medical reconciliation are discretionary in nature, and the first prong of the *Gaubert* test is satisfied.

    2. <u>The VA's exercise in judgment with its EHR system is grounded in considerations of public policy.</u>

As for the second prong, Courts presume actions are grounded in public policy where, as here, the regulatory scheme or agency guidelines expressly or impliedly allows the government to exercise discretion. *See Gaubert*, 499 U.S. at 324-25. Additionally, courts find the government's decision-making with respect to equipping and maintaining medical facilities and emergency departments are clearly grounded in policy decisions. *Tolbert*, 555 F. Supp. 3d at 1172 (selection of emergency department equipment is "precisely the sort of policy-based decision protected by the discretionary function exception."); *Peeples*, 2016 WL 7383357, at *4-5 (where no mandatory directive required VA to provide a specific treatment to patient existed, decision was discretionary and the court presumed that this discretionary discretion was grounded in policy pursuant to the *Gaubert* presumption). Further, "in determining the course of action to take in overseeing the delivery of healthcare . . . policy considerations are relevant, including the provision of healthcare services to disabled veterans." *Tomkiel v. United States*, No. 8:14-cv-2758, 2016 WL 3212088, at *3 (M.D. Fla. June 7, 2016) (finding discretionary function exception applied when relevant

standards for VA employees involved elements of choice susceptible to policy considerations) (citing *Cosby v. U.S. Marshals Serv.*, 520 F. App'x 819, 821 (11th Cir. 2013)).

The VA's decisions on how to design, implement, and use its EHR system involve balancing policy considerations including effective patient care, confidentiality of records, and health care providers' access to records and patient information. *See Tolbert*, 555 F. Supp. 3d at 1172-73. VHA Handbook 1907.01 notes the balancing of these policy considerations, providing that the VA's EHR must maintain an accurate health record, provide access to appropriate persons, and maintain patient privacy under applicable law. *See* Ex. E at 4-8. Likewise, VHA Directive 1345 provides that the VA has established a system-wide approach to medication reconciliation, balancing access and communication with confidentiality concerns to ensure well-coordinated, safe patient care and appropriate use of resources. *See* Ex. F at 9. The VA had discretion to make decisions in designing and implementing an EHR and medical reconciliation system that considered these policies. Therefore, the Court lacks jurisdiction under the discretionary function exception to the FTCA over Plaintiff's claims regarding the EHR and medical reconciliation system.

### C. The FTCA does not waive sovereign immunity for alleged negligence at the corporate or institutional level.

Under the FTCA, the United States may be sued for injury "caused by the negligent or wrongful act or omission of any *employee* of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added); *see also United States v. Olson*, 546 U.S. 43, 44 (2005) ("We here interpret these words [in § 1346] to mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*'

liable in tort.") (emphasis in original). An "employee of the government" includes, in relevant part, "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency." 28 U.S.C. § 2671. And, the waiver of immunity for tortious acts or omissions is limited to circumstances in which a "private individual" would be liable under state law for the same act or omission. 28 U.S.C. § 2674; 28 U.S.C. § 1346(b)(1). A plaintiff must prove that a private individual—not an entity—would be liable under applicable state law. *See Olson*, 546 U.S. at 45-46 (finding individual inspectors, not the governmental entity employing them, could be liable under state law under the 'private person' standard). Accordingly, the FTCA only waives the United States' sovereign immunity for the negligent acts of an individual acting within the scope of his or her federal employment; there is no waiver of sovereign immunity for alleged institutional negligence on the part of a federal agency. *Id.*; *see also Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005).

In *Adams*, the court analyzed section 1346 in conjunction with section 2671, and logically concluded that the FTCA's use of "person" applies only to natural persons. *Id.* at 1053-54. As *Adams* explains, the definition of "employee of the government" in § 2671 lists five categories of employees. *Id.* "Each category, save for the one referring to 'persons acting on behalf of a federal agency,' explicitly concerns employees that can be only *human beings*. . . ." *Id.* at 1053-54 (emphasis added). And, applying the canon that several items in a list that share a common attribute should be interpreted similarly, the category of "persons acting on behalf of a federal agency" is limited to human beings as well. *Id.* at 1054.

The *Adams* court also noted that construing the statute to only waive immunity for negligent acts committed by natural persons is consistent with the FTCA's overarching purpose, which is to shield federal employees from *personal* liability for actions taken within the scope of

their employment. *Id.* at 1053-54. The FTCA's purpose would be "substantially frustrate[d]" if "persons," and thus "employees of the Government," included artificial entities because Congress amended the FTCA to protect from personal liability "natural persons whose personal fortunes might suffer, not artificial corporate entities which have limited liability." *Id.* at 1052-54. *See also Boyle v. United States*, 605 F. Supp. 3d 653, 659 (E.D. Pa. 2022) ("Because the tort must arise from an 'act or omission of any *employee* of the Government,' the FTCA does not waive sovereign immunity for claims based on corporate negligence.") (emphasis in original); *Daniels v. United States*, No. 20-cv-3893, 2021 WL 2327856, at *2 ("The corporate negligence claim is outside the Court's jurisdiction as created by the United States' waiver of sovereign immunity in § 1346(b) of the FTCA.").

Here, Plaintiff contends that the entire VA is liable for alleged shortcomings in its EHR system and medication reconciliation capabilities; yet, despite the comprehensive discovery obtained, Plaintiff cannot name a single *individual* of negligence in this regard. *See* Louis Dep. 40:13-20 (Q: So, who specifically failed to appropriately use medical reconciliation on January 18, 2021? A: I would say—the way the system is set up is unable to do—to bring the medications in. The—the system did not reconcile the medications. I don't know what—how the system is setup but it did not—"they" being the VA."); Louis Dep. 36:20-37:2 (Q: Who, on January 15, 2021, failed to have completed and updated medical records in the EMR? A: When you say "who," I would say the VA.). These are exactly the types of theories and allegations that violate the "private person" standard and are clearly barred under the FTCA, as they allege negligence on the part of a government entity rather than a government employee, as required under § 1346 and applicable Supreme Court case law as described above.

## IV.     CONCLUSION

As discussed above, Plaintiff's liability theories regarding the VA's EHR system should be dismissed for lack of subject matter jurisdiction because (1) they were not exhausted administratively; (2) the discretionary function exception bars these theories, and (3) the United States does not waive sovereign immunity for negligence claims at the corporate or institutional level.

WHEREFORE, Defendant requests the Court dismiss these theories pursuant to Rule 12(b)(1).

**S.D. Fla. L.R. 7.1(A)(3) Certification**:  Undersigned certifies she conferred with Plaintiff's counsel Peter Bertling, Esq. about the relief requested in this Motion, including via telephone, email correspondence, and during depositions of Plaintiff's expert witnesses, and Plaintiff declined to withdraw this opinion of Plaintiff's expert witness, Dr. Paul Louis.

Date: July 31, 2024                                         Respectfully submitted,

                                           **MARKENZY LAPOINTE**
                                           **UNITED STATES ATTORNEY**

By:     *Monica L. Haddad*
         MONICA L. HADDAD
         Assistant U.S. Attorney
         Florida Bar No. 99426
         Email: Monica.Haddad@usdoj.gov
         U.S. Attorney's Office
         Southern District of Florida
         500 S. Australian Avenue, Suite 400
         West Palm Beach, Florida 33401
         Telephone: (561) 209-1004
         Facsimile: (561) 820-8777

         MARY BETH RICKE
         Assistant U.S. Attorney
         Florida Bar No. 107213
         Email: Mary.Ricke@usdoj.gov
         U.S. Attorney's Office
         Southern District of Florida
         500 E. Broward Boulevard. Suite 700
         Ft. Lauderdale, Florida 33394
         Telephone: (954) 660-5749
         Facsimile: (954) 356-7336

*Attorneys for Defendant, United States of America*