UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:23-cv-80911-CANNON

ESTATE OF RICO MARLES, by and
through Brenda Leigh Marles; BRENDA
LEIGH MARLES, individually,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

**DEFENDANT UNITED STATES OF AMERICA'S STATEMENT OF
MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

    Defendant United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this Statement of Material Facts to which Defendant contends are not genuinely disputed, pursuant to Rule 56.1 of the Local Rules for the United States District Court for the Southern District of Florida and in conjunction with Defendant's Motion for Summary Judgment.

    In compliance with the Court's Order Setting Pre-Trial Deadlines, and Referring Certain Matters to Magistrate Judge [D.E. 21], Defendant circulated to Plaintiff a copy of its proposed Statement of Material Facts in support of its Motion for Summary Judgment and requested Plaintiff advise which facts it did not dispute. The facts Plaintiff did not dispute are in the Joint Statement of Undisputed Facts [D.E. 53]. Below are the numbered facts which Plaintiff disputes.

### West Palm Beach VA Medical Center ("WPB VAMC")

1. WPB VAMC voluntarily applies 42 U.S.C. § 1395dd, the "Emergency Medical Treatment and Labor Act" ("EMTALA") standards to manage patient care in the ED. This includes no person being rejected from care regardless of veteran status or capacity to pay. The facility also provides training to WPB VAMC staff on EMTALA. D.E. 50-1, Decl. of Risk Manager ¶ 5.

2. Every patient treated in the ED is screened for suicidal/homicidal ideations, regardless of complaint. D.E. 50-1, Decl. of Risk Manager ¶ 11; D.E. 49-4, Rivera Dep. 52:3-6.

3. This screen consists of two initial questions: (1) Over the past month, have you wished you were dead or wished you could go to sleep and not wake up?; and (2) Over the past month, have you had any actual thoughts of killing yourself.; and a third question is "In your lifetime, have you ever done anything, started to do anything, or prepared to do anything to end your life (for example, collected pills, obtained a gun, gave away valuables, went to the roof but didn't jump)?" D.E. 50-2, USA Production_00451-52; 458

4. WPB VAMC also staffs a walk-in mental health clinic in Unit 1C ("MHC"), where a patient can receive a same-day appointment. D.E. 50-1, Decl. of Risk Manager ¶ 12-15.

5. On January 15, 2024, it was open from 8:00 a.m. to 4:30 p.m. D.E. 50-1, Decl. of Risk Manager ¶17. Patients are told to go to the MHC directly, and are not escorted by any other employees from the ED. D.E. 49-4, Rivera Dep. 90:21-91:10.

6. January 2021 was a busy time in the ED because of COVID-19. D.E. 49-3, Fairweather Dep. 58:9-13.

7. Patients in the ED were very anxious about COVID-19. D.E. 49-3, Fairweather Dep. 128:13-14. It was not uncommon to have patients presenting with nebulous complaints and be concerned about having COVID-19 and dying. D.E. 49-2, Huber Dep. 75:1-8.

8. As of January 15, 2021, Rico Marles had never received primary care at WPB VAMC. D.E. 49-1, Pandit Dep. 67:21-23; D.E. 50-1, Decl. of Risk Manager ¶ 29.

9. On January 15, 2021, Rico Marles did not have any VA provider listed for his primary care. D.E. 49-1, Pandit Dep. 31:5-32:3. D.E. 50-1, Decl. of Risk Manager ¶ 29.

10. As of January 15, 2021, Rico Marles had no active prescriptions at WPB VAMC. D.E. 50-2, USA Production_000457; D.E. 49-1, Pandit Dep. 65:15-66:19. D.E. 50-1, Decl. of Risk Manager ¶ 27.

11. Brenda Marles stated she and Rico Marles were together at home January 15 through January 19, 2021. D.E. 50-9, Pl. Supp. Resp. to Def. Interrog. Nos. 9-10.

12. Brenda Marles testified that Rico Marles was not having trouble sleeping during this timeframe. D.E. 49-7, Pl. Dep. 274:25-275:14.

13. Brenda Marles testified that Rico Marles did not report having crazy dreams. D.E. 49-7, Pl. Dep. 275:15-17.

14. Brenda Marles testified that Rico Marles was not experiencing hallucinations, reporting hearing or seeing things that were not there, and had no mental health issues the weekend of January 15 through 19, 2021. D.E. 49-7, Pl. Dep. 275:18-276:5

15. Brenda Marles did not have any concerns that Rico Marles was suicidal. D.E. 49-7, Pl. Dep. 276:6-7. Rico Marles had never complained to her about any mental health concerns aside from anxiety. D.E. 49-7, Pl. Dep. 276:11-16.

16. Brenda Marles did not attend either of Rico Marles's January 2021 visits to WPB VAMC. D.E. 49-7, Pl. Dep. 284:5-9; 312:2-4.

**Rico Marles's Visit to Emergency Department at WPB VAMC on January 15, 2021**

17. In the ED triage note, Rico Marles was screened as possible COVID infection due to his gastrological complaints and placed in Room 10. D.E. 50-2, USA Production_00457.

18. Rico Marles's vital signs were also noted as normal. D.E. 50-2, USA Production_00457.

19. Dr. Hema Pandit was the emergency department physician who evaluated Rico Marles on January 15, 2021. In her ED Department History/Physical Exam note ("H&P note") where she recorded her examination findings, she noted Rico Marles's "Chief Complaint/History of Present Illness" as:

> 3-4 days of insomnia, sob, hallucinations, night sweats. H/O PTSD, but these hallucinations are a little different 'you know like dreams. They prevent me from sleeping. And because I am not sleeping, the hallucinations are getting worse.' Feeling thirsty, polydipsia. Pt having anxiety over possible covid infection given his sx which is the main reason he presented to the ER today. H/O costochondritis and chronic intermittend chest pain which is unchanged. 'There was a lump behind my R ear that was swollen and hurting. NOw it's gone I think. Then I have some circular rash on my back. I don't know may be I have Covid.' Denies any URI sx, f/c, abd pain, d/c, HA, loss of smell/taste. +Nausea at times. Weight gain of 10+ pounds over the past 2 weeks. **Denies any depression, s/h/pi.**

D.E. 50-2, USA Production_00459-460 (emphasis added). Dr. Pandit also noted a mental health history of "anxiety." D.E. 50-2, USA Production_00460.

20. At her deposition, Dr. Pandit had an independent recollection of Rico Marles and had reviewed her notes from treatment after learning of his suicide shortly after it occurred. D.E. 49-1, Pandit Dep. 38:14-39:12.

4

21. During the visit, Dr. Pandit also inquired further about Rico Marles's report of "hallucinations." She was able to determine that they were not a mental health issue through her experience and training, talking to him, and doing the exam. D.E. 49-1, Pandit Dep. 10:6-10.

22. Dr. Pandit explained instances where a patient might say "hallucinations" but really be referring to something else. D.E. 49-1, Pandit Dep. 9:16-10:1-5, 14-25. Dr. Pandit confirmed the "hallucinations" Rico Marles was experiencing were not flashbacks related to PTSD, as reflected in her note. D.E. 49-1, Pandit Dep. 30:11-14; D.E. 50-2, USA Production_00459

23. Dr. Pandit explained in her clinical judgment that a mental health consult was not necessary given his presentation. D.E. 49-1, Pandit Dep. 35:24-36:5; 36:14-20; 37:4-38:1.

24. Dr. Pandit informed Rico Marles about the MHC given all his symptoms and that it was available if he decided to go. D.E. 49-1, Pandit Dep. 34:20-35:23. Dr. Pandit explained "informed" meant she told him he needs to go there and that he can walk in. D.E. 49-1, Pandit Dep. 35:18-23. Dr. Pandit recalled that Rico Marles did not seem interested in going. D.E. 49-1, Pandit Dep. 35:7-11.

25. The discharge note signed by RN Fairweather at 2:58 p.m. included special instructions (in addition to the COVID-19 instructions provided) that Rico Marles should "follow up with your primary care provider. return to ED as needed." D.E. 50-2, USA Production_00454.

26. RN Fairweather also noted discharge instructions at 3:10 p.m. that she provided discharge instructions and noted "P[atient] directed to go to 1C for mental health evaluation." D.E. 50-2, USA Production000456. Rico Marles then left room 10. D.E. 49-3, Fairweather Dep. 122:5-13.

27. RN Fairweather explained that by the term "directed," she showed Rico Marles where to go, but did not walk him down the hallway. D.E. 49-3, Fairweather Dep. 123:10-21.

28. Dr. Pandit discharged Rico Marles after concluding a diagnosis of "anxiety" and "r/o [rule-out] COVID." D.E. 50-2, USA Production_00145. Dr. Pandit explained that rule-out COVID was because sometimes patients test negative but if still have symptoms, would need to be retested. D.E. 49-1, Pandit Dep. 33:1-9.

29. At discharge, the ED clerk made Rico Marles an appointment to establish care with the primary care team at the WPB VAMC. The appointment was for February 1, 2021. D.E. 50-2, USA Production__003401.

30. Rico Marles was not treated at the MHC after he was discharged from the ED. If he had gone for treatment, there would have been a note in his medical chart. D.E. 50-1, Decl. of Risk Manager ¶¶ 16, 18, 19.

**Rico Marles's Second Visit to Emergency Department at WPB VAMC on January 18, 2021**

31. RN Rivera explained the mention in the note "[d]enies suicidal or homicidal ideas" is because he asked the patient again, in addition to the negative result of the Columbia screen. D.E. 49-4, Rivera Dep. 159:15-25.

32. Rico Marles's vital signs were also noted as normal. D.E. 50-2, USA Production_00446.

33. Dr. Huber prescribed Rico Marles a short course of low-dose lorazepam (a benzodiazepine) to help with sleep and anxiety, the symptoms he reported at the request of the patient. D.E. 50-2, USA Production_00442; _00624. Dr. Huber also prescribed ibuprofen. D.E. 50-2, USA Production 00442; 00625.

34. Dr. Huber would have asked follow up questions about the symptoms reported by a patient, including the reason the patient was anxious. D.E. 49-2, Huber Dep. 31:19-32:20.

35. Dr. Huber did not order a mental health consult for a psychiatrist to come to the ED to evaluate Rico Marles. Dr. Huber explained in his clinical judgment that it was not necessary given his presentation. *See* D.E. 49-2, Huber Dep. 72:1-73:7.

36. Dr. Huber explained that if he had any concern about suicide risk of a patient, he would have contacted psychiatry and would have documented it. D.E. 49-2, Huber Dep. 71:19-25.

37. Rico Marles left the ED with the prescribed lorazepam as he signed for it when it was dispensed to him before discharge. D.E. 50-2, USA Production_003400.

38. Brenda Marles testified Rico Marles was with her the entire day of January 18. D.E. 49-7, Pl. Dep. 309-311.

## Institutional Disclosure and Opinions of Plaintiff's Experts

39. At the institutional disclosure meeting on October 19, 2021, Dr. Ronald Williams was not admitting liability on behalf the VA, and neither was anyone else present. D.E. 49-5, Williams Dep. 116:19-117:25.

40. Anxiety in the ED can manifest itself and is common because the patient thinks they might have a life-threatening condition. D.E. 49-8, Louis Dep. 101:8-24.

41. Plaintiff disclosed three standard of care experts- emergency room physician, Paul Louis, emergency room physician, Leslie Zun, and clinical psychologist, Steven Bruce. None of these experts opine that providers at WPB VAMC acted with a reckless disregard in their treatment of Rico Marles in the ED. D.E. 50-5, 50-6, 50-7, 50-8.

42. Dr. Louis stated that a physician can only do their best based on the information provided by the patient. D.E. 49-8, Louis Dep.149:6-10.

43. Dr. Louis opined Dr. Pandit appears to have completed psychiatric portion of exam on January 15 (D.E. 49-8, Louis Dep. 43:13-25) and her referral to the MHC once his results came back normal was appropriate (D.E. 49-8, Louis Dep. 89).

44. Dr. Louis admits he does not know what follow up questions Dr. Pandit would have asked about hallucinations, or any other issue complained of during the January 15 visit.  D.E. 49-8, Louis Dep. 99:21-101:7.

45. Dr. Louis and Dr. Bruce agreed a patient with a stable psychiatric complaint can be discharged from the ED. D.E. 49-8, Louis Dep. 157:23-158:1; D.E. 49-9, Bruce Dep. 91:2-5.

46. Dr. Louis stated lorazepam is a medication prescribed to reduce anxiety and insomnia, and described it as a "strong sedative anxiolytic."  D.E. 49-8, Louis Dep. 69:5-10; 21.

47. Dr. Louis opined that "clearly, you can tell by the fact that he killed himself within 24 hours that somebody missed something."  D.E. 49-8, Louis Dep. 64:12-14.

Date: July 31, 2024								Respectfully submitted,

**MARKENZY LAPOINTE**
**UNITED STATES ATTORNEY**

By:	*Monica L. Haddad*
	MONICA L. HADDAD
	Assistant U.S. Attorney
	Florida Bar No. 99426
	Email: Monica.Haddad@usdoj.gov
	U.S. Attorney's Office
	Southern District of Florida
	500 S. Australian Avenue, Suite 400
	West Palm Beach, Florida 33401
	Telephone: (561) 209-1004
	Facsimile: (561) 820-8777

	MARY BETH RICKE
	Assistant U.S. Attorney
	Florida Bar No. 107213
	Email: Mary.Ricke@usdoj.gov
	U.S. Attorney's Office
	Southern District of Florida
	500 E. Broward Boulevard. Suite 700
	Ft. Lauderdale, Florida 33394
	Telephone: (954) 660-5749
	Facsimile: (954) 356-7336

*Attorneys for Defendant, United States of America*