UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:23-cv-80911-CANNON

ESTATE OF RICO MARLES, by and
through Brenda Leigh Marles; BRENDA
LEIGH MARLES, individually,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

**DEFENDANT UNITED STATES OF AMERICA'S**
**MOTION TO BIFURCATE TRIAL**

Defendant, United States of America, through the undersigned Assistant United States Attorney, and pursuant to Federal Rule of Civil Procedure 42(b), requests the Court bifurcate the trial to be scheduled[1] so that the issue of liability is heard first, and a trial on damages, if necessary, to proceed at a later date. In support, Defendant states as follows:

**I.    INTRODUCTION**

The sole remaining count of the Amended Complaint before this Court is Count I, the Estate of Rico Marles's claim for wrongful death following the suicide of Rico Marles.[2] At trial, Plaintiff must prove the elements of medical negligence relating to the treatment received by Rico

---

[1] On April 14, 2025, the Parties filed a Joint Scheduling Report advising of their first joint availability for a trial in July or August 2025. *See* D.E. 88. The trial has not yet been rescheduled by the Court.
[2] The Court previously dismissed Brenda Marles's personal claim for negligent infliction of emotional distress. *See* D.E. 47. Therefore, Brenda Marles's involvement in this case is currently only as the personal representative of the Estate of Rico Marles.

Marles in the emergency department at the West Palm Beach Department of Veterans Affairs Medical Center ("WPB VAMC") on January 15, 2021, and January 18, 2021. Therefore, a finding of liability at trial will rest on whether the two physicians who treated Rico Marles on these two visits breached the relevant standard of care applicable to emergency medicine physicians, and whether the breach is the legal cause of Rico Marles's suicide at his home. As reflected in the Court's recent ruling on Defendant's Motion for Summary Judgment, Florida's Good Samaritan Act (GSA) could apply to the medical care provided on these two instances, and factual issues on this point remain during the liability phase of the trial. Issues of proof relating to medical negligence also remain during the liability phase of the trial.

In the Joint Scheduling Report filed by the parties early in the litigation (*see* D.E. 20), the parties initially estimated five to seven days for trial, however given the development of this case, Defendant is concerned that a realistic estimate of time necessary for trial is three to three and a half weeks. Plaintiff has also indicated she anticipates trial will take more than seven days. Therefore, Defendant believes a realistic estimate of the liability portion of the trial alone will consume the full two weeks of the Court's two-week trial docket. *See also,* D.E. 86.

As revealed through the course of the litigation and telephonic conferrals, Defendant anticipates that Plaintiff plans to call numerous witnesses relating to damages, and/or events after Rico Marles's death, which realistically could almost double the trial from approximately two weeks to approximately three to three and a half weeks, given the number of witnesses Plaintiff has stated she intends to call. Therefore, in the interest of convenience and conservation of resources for both the Court and the parties, Defendant requests bifurcation of liability from damages in the upcoming trial.

## II.     MEMORANDUM OF LAW

### a.  Standard for Bifurcation

Bifurcation is governed by Federal Rule of Civil Procedure 42(b), which provides, in pertinent part, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The party seeking bifurcation bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." *Krug v. Celebrity Cruises, Inc.*, No. 16-22810-CIV, 2017 WL 5640729, at *1 (S.D. Fla. Apr. 13, 2017) (citing *Brown v. Toscano*, 630 F. Supp. 2d 1342, 1345 (S.D. Fla. 2008)). "To justify bifurcation, only one of [Rule 42] reasons needs to be shown." *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 13-21142-CIV, 2013 WL 4068786, at *2 (S.D. Fla. Aug. 12, 2013).

"Rule 42 confers broad discretion on the district court, permitting bifurcation when it furthers convenience." *Krug*, 2017 WL 5640729, at *3 (citing *Gilbert v. State Farm Mut. Auto. Inc., Co.*, 311 F.R.D. 685, 686 (M.D. Fla. 2015) (internal quotation marks omitted); *see also Harrington v. Cleburne County Board of Education*, 251 F.3d 935, 938 (11th Cir. 2001) ("Rule 42(b) "confers broad discretion on the district court in this area, permitting bifurcation merely "in furtherance of convenience. That is not a high standard ….") (internal quotation marks omitted).

"Separate trials are permitted 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'" *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1260 (11th Cir. 1983). The decision to order separate trials of separate issues "depends on the peculiar facts and circumstances of each case." *See Alexander v. Fulton Cty.*, 207 F. 3d 1303, 1325 (11th Cir. 2000) (overruled on other grounds). Moreover, it "is based

3

upon whether bifurcation will best serve the convenience of the parties and the Court, avoid prejudice, and minimize expense and delay." *See Gafen v. Tim-Bar Corp.*, No. 01-7626-CIV, 2002 WL 34731041, at *1 (S.D. Fla. Oct. 21, 2002), *order clarified,* No. 01-7626-CIV, 2002 WL 34731042 (S.D. Fla. Nov. 6, 2002).

### b. Separate Trials will be Conducive to Expedition of the Litigation and to Efficient Judicial Administration.

In this case, bifurcation will best serve the convenience of the parties and Court, and it would minimize expense and delay because if there is a finding by the Court of no liability on the part of Defendant, then there would be no need to present additional testimony and evidence concerning Plaintiff's claimed damages, thus promoting judicial economy and saving the parties significant expenses in time and travel costs relating to numerous retained experts and treating physicians involved in the damages phase. In this regard, Defendant submits that bifurcating the liability and damages issues will substantially reduce the time necessary for trial and facilitate efficient presentation of key evidence as the liability issues will be streamlined.

During the parties' conferral on April 8, 2025, Plaintiff stated she believes the liability phase could be completed in two weeks, and that the damages portion of the trial would consist of an additional three to four days. Plaintiff indicates she intends to call at least 17 witnesses during the liability stage. Defendant has additional witnesses to call in its defense of liability.

The most critical witnesses for the liability phase of trial are: (i) the two doctors and two nurses from WPB VAMC who treated Rico Marles on January 15 and January 18; (ii) Defendant's two retained experts on emergency medicine; (iii) Plaintiff's two retained experts on emergency medicine; and (iv) Brenda Marles if she chooses to testify during the liability phase, for a total of nine witnesses. Defendant would also likely present testimony of Rico Marles's mother, Vickie Marles, and one of his friends in contact with him that weekend before he

4

committed suicide, to establish other factors that may have led to his suicide which were wholly unrelated (and never disclosed) to WPB VAMC providers, such as marital discord between Rico Marles and Brenda Marles. Such evidence would support Defendant's affirmative defense relating to an intervening and superseding cause breaking any chain of negligence. Another defense witness for liability would be one of the PBSO officers who reported to the scene of Rico Marles's home in the early morning of January 19, 2021. Lastly, Defendant would present the medical examiner to discuss the toxicology report showing Rico Marles's non-compliance with medical directives by his failure to take the medication prescribed to him on January 18, in addition to the failure to report to the walk-in mental health clinic on January 15.

Plaintiff has additional witnesses she wishes to call during liability phase of trial. During the April 8th conferral call, Plaintiff also stated that she intends to call at least four other employees from WPB VAMC for the liability portion of her case, but these individuals only participated in an Institutional Disclosure meeting held 9 months after his death. Furthermore, the testimony of anyone involved in the Institutional Disclosure would be legally irrelevant to the determination of liability as none treated Rico Marles on January 15 or January 18, and any statements made during an Institutional Disclosure meeting are not an admission of liability. *See Lyons v. United States*, No. 1:20-cv-01120-JMS-DLP, 2021 WL 5359599 (S.D. Ind. 2021) (conducting in-depth analysis of VHA Directive 1004.08 and finding statements made at an institutional disclosure is not an admission of liability); *Aubert v. United States*, No. 09–3566.2011 WL 1558787 (E.D. La. 2011) (discussing how the institutional disclosure meeting was not an admission of liability).

Plaintiff also claimed during the conferral call that as part of her liability portion of the case, she intends to call family members of Brenda Marles (e.g. her mother Yvette Fort, and her

5

brother Jamieson Fort) and friends (e.g. Melvin McKnight), and a PBSO officer who investigated the suicide (e.g. PBSO Detective Chad Shane). Therefore, combining both Defendant and Plaintiff's estimates, there are at least 21 witnesses to be presented during the liability phase of trial. It is likely Plaintiff has even more planned liability witnesses than those discussed on the conferral call.

Plaintiff identified three retained expert witnesses for damages in her Rule 26 Expert Disclosure: (i) a vocational rehabilitation expert; (ii) a psychiatrist who examined Brenda Marles; and (iii) an economist. Plaintiff also identified six non-retained treating physicians of Brenda Marles who treated her after the death of Rico Marles. Therefore, these nine expert witnesses disclosed by Plaintiff have no relation to the determination of liability.[3] Defendant also disclosed a vocational rehabilitation expert, expert economist, expert in psychology, and expert in psychiatry to testify regarding damages. Thus, there are at least 13 witnesses to testify regarding damages in this case, which realistically, could take over one week to complete and require expenditure of monetary resources of the parties when such presentation could be unnecessary if the Court finds Plaintiff has not met her burden of proof for liability.

Unquestionably, bifurcation would scale down the length of the trial and provide an intuitive stopping point for the Court to weigh evidence on whether the GSA applies based on Rico Marles's presentation of an emergent condition, whether Plaintiff has proven negligence through a breach of the applicable standard of care for emergency department physicians, and whether there was an intervening cause of death before proceeding to hearing any evidence relating to damages.

---

[3] Defendant does not waive its objections to the sufficiency of the disclosures of these witnesses pursuant to Rule 26(a)(2)(C).

### c. Liability Evidence is Distinct and Independent from Damages Evidence.

As explained above, in this case, there is a clear division between the witnesses and evidence concerning the question of liability and the question of damages. The witnesses that would be required for any damages trial are readily identifiable, and their testimony is unrelated to liability. There is little to no risk of overlapping evidence with respect to liability and damages in this case, which weighs in favor of bifurcation.

Where the issues to be bifurcated call for separate and distinct evidence, bifurcation is appropriate. *See Wells v. XPEDX*, No. 8:05-CV-2193-T-EAJ, 2006 WL 8440175, at *2 (M.D. Fla. Mar. 1, 2006) ("Bifurcation is particularly appropriate where resolution of a single claim or issue could be dispositive of the entire case.") (citations omitted); *see Gafen*, 2002 WL 34731041, at *1 (noting the evidence necessary to determine liability was entirely different from that necessary to determine damages and finding "it is preferable that the jury consider the question of liability without the potential prejudice caused by evidence concerning the severe injuries to [plaintiff] and his family."); *see also, Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001) (affirming the district court's refusal to bifurcate trial under Rule 42(b) where there was substantial overlap in the issues, facts, evidence, and witnesses required for both claims).

Here, purported evidence of Defendant's liability will center on the medical treatment received by Rico Marles on two occasions in the emergency department of the WPB VAMC as well as whether there was an intervening cause of death. Such evidence does not bear on a determination of the Estate's claimed damages, including its claimed economic and non-economic damages, which will come from different witnesses and is completely unrelated to the medical care Rico Marles received on January 15 and January 18. It is unlikely that any witnesses Plaintiff calls to address issues on liability will need to be called back for a trial with respect to damages

other than Brenda Marles (whose testimony on damages will not be cumulative with her liability testimony), and she will be present during the whole trial as the personal representative of the Estate.[4]

### d. Bifurcation is Fair to All Parties.

Another consideration relevant to the determination of whether to bifurcate is "a fair and impartial trial 'through a balance of benefits and prejudice.'" *Gilbert*, 311 F.R.D. at 686 (citing *Medtronic Xomed, Inc. v. Gyrus* ENT LLC, 440 F. Supp. 2d 1333, 1334 (M.D. Fla. 2006)); *see also Gafen*, 2002 WL 34731041, at *1 ("Furthermore, '[a] paramount consideration in ruling on a motion to bifurcate is a fair and impartial trial to all litigants.'") (citing *Beauchamp v. Russell*, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982).

Here, no prejudice will be sustained by Plaintiff with bifurcation of the liability and damages issues. While Defendant respectfully submits that there should be a finding of no liability which would conclude the matter, to the extent the Court finds otherwise, Plaintiff will be permitted to subsequently present testimony and evidence of her claimed damages before the Court and there would be no logistical concerns surrounding a jury since FTCA actions tried without a jury.

By separating the issues of liability and damages, this bench trial will be shorter as the parties can first present their case regarding liability before proceeding to the issue of damages, if necessary. Furthermore, no witness Plaintiff intends to call during the liability phase would have to be recalled to testify during the damages phase, besides Brenda Marles, who likely would be

---

[4] Defendant may have to recall one witness for the damages stage, Dr. Elliott, whose testimony on damages will not be cumulative with his liability testimony.

present anyways during the whole trial in her capacity as the personal representative of the Estate, the sole remaining plaintiff in this action.

### III. CONCLUSION

Defendant requests the Court bifurcate the upcoming trial into liability and damages phases. In doing so, the Court would be able to conserve judicial resources by shortening the length of trial by at least a week given the numerous damages witnesses to be called by the parties. Furthermore, there is a clean break and little overlap between witness testimony (including expert witnesses) and documentary evidence relating to liability versus damages. A trial on liability first would also conserve the resources of the Parties by eliminating the need to call seven retained experts to testify on damages. There is no prejudice to the parties by bifurcating liability from damages since Plaintiff would still be able to present her evidence on damages at a later date in a subsequent bench trial, if the Court finds in her favor on liability.

WHEREFORE, Defendant, United States of America, respectfully requests the Court enter an order bifurcating the liability and damages issues at trial, and for all other relief this the Court deems just and proper.

**Certificate of Compliance with Local Rule 7.1(A)(3):** Undersigned counsel certifies that she conferred with Plaintiff's counsel, Peter Bertling, Esq., and Plaintiff opposes the relief requested by this Motion.

Date: April 17, 2025                           Respectfully submitted,

               **HAYDEN P. O'BYRNE**
               **UNITED STATES ATTORNEY**

      By:  *Monica L. Haddad*
         MONICA L. HADDAD
         Assistant U.S. Attorney
         Florida Bar No. 99426
         Email: Monica.Haddad@usdoj.gov
         U.S. Attorney's Office
         Southern District of Florida
         500 S. Australian Avenue, Suite 400
         West Palm Beach, Florida 33401
         Telephone: (561) 209-1004
         Facsimile: (561) 820-8777

         MARY BETH RICKE
         Assistant U.S. Attorney
         Florida Bar No. 107213
         Email: Mary.Ricke@usdoj.gov
         U.S. Attorney's Office
         Southern District of Florida
         500 E. Broward Boulevard. Suite 700
         Ft. Lauderdale, Florida 33394
         Telephone: (954) 660-5749
         Facsimile: (954) 356-7336

      *Attorneys for Defendant, United States of America*